**Meyer Harris COHEN, Petitioner,**

v.

**Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.**

**Civ. A. No. 18122-3.**

United States District Court,
W. D. Missouri, W. D.

Sept. 28, 1970.

832

Gerald H. Lowther, Springfield, Mo., for petitioner.

Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for respondent.

## ORDER DENYING PETITION FOR HABEAS CORPUS

BECKER, Chief Judge.

Petitioner, a federal convict confined in the United States Medical Center for Federal Prisoners, petitions this Court for a writ of habeas corpus to terminate his current confinement in the Medical Center. Leave to proceed in forma pauperis has been previously granted.

Petitioner states that he was convicted of income tax evasion by a jury in the United States District Court for the Southern District of California; that he was sentenced on that conviction on July 1, 1961, to imprisonment for a term of fifteen years; that he appealed from the judgment of conviction and imposition of sentence to the United States Court of Appeals for the Ninth Circuit but the judgment was affirmed on appeal; that petitioner then sought certiorari in the United States Supreme Court, which was denied on February 14, 1962; that he has previously filed a petition or habeas corpus in this Court in which he sought to have the denial of his parole

reviewed, but the petition was denied on January 17, 1970 (see Cohen v. United States Board of Parole (W.D.Mo.) Civil Action No. 18004-3); and that he was represented by counsel at his arraignment and plea, his trial, his sentencing, on appeal and in preparation, presentation or consideration of his postconviction motions.

Petitioner states the following as grounds for his contention that the conditions of his confinement violate his federally protected rights:

"(a) That petitioner's medical condition is of a severe and debilitating nature and that rehibilitation (sic) can only be accomplished through acute therapy and treatment which is only obtainable through private means necessitating release from confinement.

"(b) That petitioner['s] continued confinement is unnecessary for the protection of society and that the physical condition of petitioner is of such severity that his mental attitude and usefulness as a constractive (sic) member of society will be permanently impaired through continued confinement.

"(c) That petitioner has been threatened and his life put in jeopardy because of the present confinement and that the respondant (sic) has been negligent in the maintenance of petitioner's safety and well being. That continued confinement increases the danger to petitioner and it is cruel and unusual punishment to subject petitioner to a constant menance (sic) that cannot be alleniated (sic) because of respondants (sic) inability to protect petitioner."

After the filing of the show cause order, respondent's response to the show cause order and petitioner's traverse, an order was entered herein on May 20, 1970, denying the petition for habeas corpus. Thereafter, on motion of the petitioner to amend judgment and in the exercise of judicial discretion under Rule 59, F.R.Civ.P., the order of May 20, 1970, was vacated (because of petitioner's contention that he could show the factual merit of his claims). This cause was then set for a plenary evidentiary hearing at 11:00 a. m., July 10, 1970, at Springfield, Missouri.

On July 10, 1970, the hearing was held in the United States Courthouse, Springfield, Missouri. The evidence adduced therein proved the following facts. As was found by the United States District Court for the Northern District of Georgia in Cohen v. United States (N.D.Ga.), 252 F.Supp. 679, petitioner on August 14, 1963, sustained an injury to his skull through the negligence of the Government in permitting the escape from maximum security of a prisoner who struck petitioner with a lead pipe. Prior to that injury, petitioner had been a "tool room worker" in the federal Penitentiary in Atlanta. He was rated by his supervisors as a good and responsible worker. One of his supervisors had advised petitioner of his intent to recommend him for awards of "meritorious good time" under the provisions of § 4162, Title 18, United States Code, providing for awards of up to three days per month for the first year of his sentence and five days per month for the remainder of the sentence in the discretion of the Attorney General for prisoners whose work in prison industry is deemed to be especially meritorious. After the injury, petitioner was transferred to the Medical Center,[1] where he is presently confined. Sometime in 1966, respondent suggested to petitioner that he learn how to type as part of petitioner's general program of reha-

---

1. The initial transfer took place on October 2, 1963. Petitioner has spent the following periods of time in the United States Medical Center:

October 2, 1963–February 26, 1965;
March 25, 1965–January 26, 1966;
February 3, 1966–February 2, 1967;
February 4, 1967–present.

bilitation. Petitioner thereupon was assigned to a typing position, but, after a brief period of training, petitioner requested, and was granted, permission to terminate the assignment. It was petitioner's testimony at the hearing herein that he requested permission to leave this assignment because one of the other typists had made homosexual advances toward him.[2] Thereafter, petitioner made no further efforts to perform any labor or other activity within the institution (or to seek protection from homosexual advances in the typing room) which might have resulted in his being awarded meritorious good time under § 4162, *supra*.

Petitioner further testified at the hearing herein that he considered the physical therapy and the medical treatment given him in the Medical Center to be satisfactory and that he had nothing to complain of in respect to the treatment given him by Dr. Ciccone and the other personnel treating and supervising him in the Medical Center.[3] He thereby expressly abandoned at the hearing his factual claims of inadequate medical treatment and of cruel and unusual punishment. His counsel formally disclaimed these factual contentions at the hearing with petitioner's approval.

The evidence further showed that petitioner had faithfully performed the daily physical exercises which his physical therapist prescribed and had maintained a good rapport with the physical therapist; that petitioner had been kept in solitary confinement for his personal security for considerable periods of time [4] during his confinement in the Medical Center; that petitioner was given extra food and other unusual amenities during these and at other times; and that petitioner was capable of performing, with minimal facility, such routine clerical tasks as writing his name and making check marks in appropriate plac-

2. Petitioner testified that he asked permission of "Assistant Warden Eldred" to terminate the typing assignment after he (petitioner) had been approached by a homosexual clerical worker who, according to petitioner, placed his hand on petitioner's private parts. According to the testimony of petitioner, Mr. Eldred granted the request, saying "Mickey, you don't have to go down there. Forget about it. It's not compulsory. You don't have to go."

3. Petitioner referred in his testimony to the physical therapist in the Medical Center, Neil Hanzlich, as a "God" and stated that he received very fine treatment in this respect, and actually that he had "no need" for other or more specialized medical treatment, but that the diet was not optimal, in his view, and that his attitude suffered from his being imprisoned. Contrariwise, the adequacy of the diet has been evidenced in the hearing in this case by the exemplar menus admitted in evidence and by respondent's testimony that he ordered that petitioner be given two portions of each item on the menus in order to sustain what respondent felt was a valid "need for additional food." Further, Judge Sidney D. Smith, Jr., in Cohen v. United States (N.D.Ga.) 252 F.Supp. 679, 685, found as follows with respect to the medical treatment received by petitioner in the Medical Center:

"On October 2, 1963, [Cohen] was transferred to the Medical Center for Federal Prisoners, Springfield, Missouri, where he is still a patient. Without recounting the various extensive medical procedures undergone by Cohen, in general since that time he has had a subsequent operation placing a metal plate in his skull, has been fitted with various braces, and given extensive therapy which he is still undergoing. In the 2½ years since the injury, he has in every instance received the very finest medical help available from a group of skilled, devoted doctors, specialists, and therapists."

4. This provided the basis for one of petitioner's claims of cruel and unusual punishment in the petition herein. At the hearing on July 10, 1970, however, petitioner expressly abandoned any claim of cruel and unusual punishment. Further, the uncontradicted evidence offered in the hearing by way of the testimony of respondent shows that petitioner was placed in a locked cell at various times for the valid reason of protecting him in the face of rumored threats to his safety; that he was humanely treated during those periods of time; and that he was currently given the "run of the ward" in which he was currently confined.

es, and that he could depress the keys of a typewriter with the digits of his right hand. In this regard, the evidence showed that petitioner, because of the level of his disability (which, at the time of the hearing, included the partial immobility and spasticity of his left arm and leg and difficulty of flexion) would not be capable of learning to type with the efficiency required in the commercial world but could type and perform minor clerical tasks which would benefit the institution and which would supplement petitioner's daily physical exercises as therapy for petitioner's physical condition.

██ In his petition herein, petitioner contended that he is entitled to release on the ground that his continued confinement, because of alleged inadequate medical treatment and inadequate protection from certain "menaces" from which the prison personnel cannot protect him, constitutes cruel and unusual punishment; that therefore he should be entitled to an early release to secure adequate treatment and personal security on his own. The evidence adduced at the hearing herein, as noted above, does not support any claim of inadequate medical treatment or cruel and unusual punishment.[5] And as stated above, petitioner expressly abandoned those claims at the hearing herein. Further, it is well settled that this Court could not order the release of petitioner as a matter of clemency. Matters of commutation of sentence, pardon or parole are solely within the province of the Executive Department of the Government. Holliday v. Settle (W.D.Mo.), 218 F.Supp. 738, and cases therein cited. If changed circumstances entitle a prisoner to clemency, "that must come from other than the Judicial Department of the Government." United States v. Patti (C.A.3), 291 F.2d 745, 746. Further, if this petition can be considered a successive petition for habeas corpus seeking review of the Parole Board's refusal to grant parole on the grounds that such a denial is a viola-

tion of petitioner's right to be free from cruel and unusual punishment, it is still not cognizable in this Court especially when the basic claim of cruel and unusual punishment has been abandoned, as in this case. As stated in the order dismissing Civil Action No. 18004-3, this contention based on the refusal to grant a parole is one which should be raised in a petition in the United States District Court for the District of Columbia, naming the Board of Parole as respondent. See Langston v. Ciccone (W.D.Mo.), 313 F.Supp. 56, and cases therein cited.

██ Petitioner's principal contention in the brief submitted by his counsel following the hearing of July 10, 1970, is that it is a denial of petitioner's right to equal protection of the laws to be denied meritorious good time under § 4162, *supra*, when it was through the negligence of the Government that his ability to earn the meritorious good time had been lost. The theory asserted by petitioner in this regard is a substantial one deserving consideration in a case in which a petitioner had been earning meritorious good time and was thereafter prevented from continuing to earn good time through the fault of the Government or wherein he otherwise indicated a predisposition to work in institutional operations but was prevented from doing so by the fault of the Government. As outlined above, however, the evidence adduced herein does not support petitioner's factual contention that he is, or has been, prevented by fault of the Government from earning meritorious good time by performing some kind of work within the prison which his past record shows he would have earned. The language of the controlling statute, § 4162, *supra*, is as follows:

"A prisoner may, in the discretion of the Attorney General, be allowed a deduction from his sentence of not to exceed three days for each month of actual employment in an industry or camp for the first year or any part thereof, and not to exceed five days for

5. See note 4, *supra*.

each month of any succeeding year or part thereof.

"In the discretion of the Attorney General such allowance may also be made to a prisoner performing exceptionally meritorious service or performing duties of outstanding importance in connection with institutional operations.

"Such allowance shall be in addition to commutation of time for good conduct, and under the same terms and conditions and without regard to the length of sentence."

The wording of the provision evinces that the congressional intent behind the statute was to encourage prisoners to accomplish work which would simultaneously benefit the penal institution and promote the rehabilitation of the prisoner. While it may not be arbitrarily and capricously denied, the award is to be given, in the discretion of the Attorney General, for service to the institution which is worthy of merit or for performing duties of outstanding importance to institutional operations.` The emphasis is on mutual benefit to the public, the institution or to the prisoner. Thus, the decision of the Attorney General or his authorized delegate not to award meri-

torious good time, as the evidence reported above shows, was neither arbitrary nor capricious, but was made in his lawful discretion and supported by more than substantial evidence.

Although the evidence showed that petitioner was not trainable as a typist for the purpose of obtaining employment as such in the commercial world outside the prison, it did show that petitioner could have contributed to the accomplishing of the prison's necessary clerical work and could have simultaneously supplemented his physical and mental therapy through such training. Although petitioner's manual ability, particularly in his left hand, has suffered some degree of significant and permanent impairment, his abilities would be useful to the prison in clerical work. Although, as the opinion of the United States District Court for the Northern District of Georgia noted, petitioner has suffered the loss of a portion of his brain, his mental acuity is evident from his testimony and voluminous correspondence which he has carried on with this Court, as well as from the examination conducted by Jonathan Rhoads, M.D. (to which Dr. Rhoads testified at the hearing herein).[6] It is

---

6. Further, in Cohen v. United States, supra, 252 F.Supp. at 685, Judge Smith noted that petitioner's "mental condition and eyesight, although temporarily injured, are completely restored. His present IQ is higher than 15 years ago * * * He writes well * * *."

Dr. Rhoads conducted an examination of petitioner's mental alertness and manual dexterity on the date of the hearing and the results of that examination support the conclusion that petitioner was capable of typing and rendering other clerical service in the Medical Center which might have provided a basis of his being awarded meritorious good time. In his brief, petitioner attacks the examination and conclusions of Dr. Rhoads in the following language:

"After the examination Dr. Rhodes (sic) again testified that he thought it was *possible* that petitioner could perform certain clerical tasks. One of the tests which Rhodes asked petitioner to perform was to punch one line of typewriter keys from left to right with his right hand. Counsel for petitioner had

timed this test and asked Dr. Rhodes whether it was true that it took Dr. Rhodes four and one half (4½) to five (5) seconds to go from left to right on the typewriter keyboard and that it had taken petitioner Cohen thirty-five (35) seconds to do the same act. Dr. Rhodes replied that he did not time the activity but that it did take petitioner Cohen much longer than it did himself. Petitioner's counsel pointed out on cross examination that many desirable tests had not been administered during the brief examination and that the purported typewriter test only examined petitioner Cohen's right hand and did not examine petitioner Cohen's left hand which is the hand which suffered paralysis as a result of the prison injury. Dr. Rhodes did not testify that with petitioner's known injuries it would be practical or it would be probable or it would be likely or that as a reasonable medical certainty his opinion was that petitioner Cohen could perform tasks in the prison system which would warrant his being granted meritorious

readily apparent therefore that petitioner could perform beneficial clerical functions, even if his typing ability is severely limited. The failure of respondent to award meritorious good time to the petitioner is not the denial of a protected federal right.

■ In the absence of an arbitrary or capricious exercise of discretion or other exceptional circumstances, the discretion of the Attorney General under § 4162 is not reviewable in the Courts. Section 4082, Title 18, United States Code; Harris v. Settle (C.A.8), 322 F.2d 908, cert. denied 77 U.S. 910, 84 S.Ct. 1171, 12 L.Ed.2d 179; Austin v. Harris (W.D.

Mo.), 226 F.Supp. 304; Sutton v. Ciccone (W.D.Mo.), 292 F.Supp. 374.

■ Petitioner argues that his assiduous performance of his daily physical therapy exercises should be deemed "work" within the meaning of § 4162. But such a contention ignores the elements of employment in industry or camp and meritorious service or performance of duties of importance in institutional operations which the words of the statute indicate should be given some, if not conclusive, weight.[7]

■ Petitioner finally asserts that, since it was through the negligence of the Government that he was disabled

---

good time. Dr. Rhodes' testimony was simply that there was a possibility that petitioner Cohen might be able to perform such tasks. If there is a one in one million chance that something could occur than (sic) that thing is possible and it has been judicially recognized that possibility is not equivalent to judicial proof of a fact. In the case of Steams [Stearns] vs. Graves [62 Idaho 312], 111 P.2d 882, 887 (Idaho 1941) the Court stated 'that which is impractical is theoretically *possible*, but cannot be done under existing conditions.'" (Emphasis petitioner's.)

Dr. Rhoads, however, plainly testified that the petitioner had good strength in his arms and hands; that he had fair coordination; that he wrote well; that he performed some exercises with perfection; that he was able to follow directions; and that he was able to punch typewriter keys with at least one hand with fair speed and facility. Dr. Rhoads also testified that, in his opinion, petitioner could perform certain clerical tasks, including that of keeping track of items and adding and subtracting numbers (petitioner himself testified that he had a knack for numbers, having acquired such when he worked as a bookmaker) and putting sheets of paper on bundles; and that, although petitioner could not compete as a typist or clerical worker in the business world, he could meet the production requirements which would be required within the prison system.

Further, Dr. Rhoads' testifying to the "possibility" of petitioner's accomplishing such work is sufficient to contradict the contention of petitioner that it would have been impossible for him to earn meritorious good time. The courts have not been hesitant to equate "possible" with

"practicable" when that is its obvious meaning. See National Enameling & Stamping Co. v. Zirkovics (C.A.8), 251 F. 184, 189; Lauck v. Reis, 310 Mo. 184, 274 S.W. 827, 832. In United States v. Kessler (C.A.3), 213 F.2d 53, 57, it was noted that one of the meanings of the word was "within or up to the limits of one's ability or capacity as determined by nature, authority, circumstances, etc." That meaning is appropriate in the case at bar, in which petitioner contends that it is not within his capacity to do the work which Dr. Rhodes testified that he "could" do—meaning that it was, in fact, within his capacity to do such work.

7. The legislative history of Section 4162 and its predecessor statute, Section 744h, Title 18, United States Code, shows that the emphasis has been from the inception of the statute on the type of service which is rendered to the institution. Section 744h, *supra*, originally limited the award to prisoners who worked in prison camps referred to in the statute or were employed in prison industry. In Bragg v. Huff (C.A.4), 118 F.2d 1006, 1007, it was said that "[t]he meaning of the statute is merely that the Attorney General may, in his discretion, allow a larger deduction from sentence to prisoners engaged in industry or confined in industrial camps than is allowed in ordinary cases." Subsequently, after the enactment into § 4126, Title 18, United States Code, of the provision for compensation "to inmates employed in any industry, or performing outstanding services in institutional operations, and compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution

from performing the type of work by means of which he might earn meritorious good time, his case is distinguishable from the rule of In re Baptista (W.D.Mo.), 206 F.Supp. 288, wherein it was held that the petitioner had no federally protected right to earn good time when the disability which prevented his earning such was incurred without the fault of the Government. But this assertion is based upon the assumption that petitioner is unable to perform work which would enable him to earn meritorious good time, an assumption which, as noted above, is not warranted by the evidence in this case.[8] The evidence shows that a minimum effort by petitioner would be recognized as a basis for meritorious good time. Petitioner has not sustained his burden of proving that he is unable to perform any type of work which would have enabled him to earn meritorious good time.[9] Petitioner's possible single experience of encountering undesirable social contacts in a typist position did not warrant his continuous failure thereafter to perform work available to him.[10]

Petitioner implies that the finding of the United States District Court for the Northern District of Georgia shows that he was unable to perform meritorious work from the date following his imprisonment to the time when he refused to continue typist training and that, therefore, this Court is bound by the doctrine of collateral estoppel to award meritorious good time retroactively for that period. But the findings of the Georgia federal court are not specific on this issue. No finding was made on petitioner's ability or inability to earn good time. And petitioner has not sustained his burden of proof in this regard. Nor is there any showing, with the exception of the typing episode, that petitioner has sought work which would possibly result in an award of meritorious good time.[11] Further, petitioner admits that, although there was some prospect of his being recommended for meritorious good time at the time of his injury, he was not in fact earning such good time. The cases are unanimous that the earning of meritorious good time under § 4162 is a privilege and that

---

where confined," Section 4162, in 1948, was amended to add the second paragraph permitting awards of meritorious good time for "exceptionally meritorious service or performing duties of outstanding importance in connection with institutional operations." Plainly, the *sine qua non* of earning meritorious good time is that the work or activity performed be of benefit to the institution.

8. Petitioner, in fact, bases the legal argument in his initial brief on the assumption that petitioner is "wholly unable" to perform any work which might result in the earning of meritorious good time, as well as petitioner's willingness to work, in the following language:

"Assuming petitioner is wholly unable to perform any work which would warrant his being credited with meritorious good time under 17 U.S.C. 4162 and prison regulations promulgated thereunder; assuming further that petitioner would have sought and performed work that would have warranted his being credited with meritorious good time; and further assuming that petitioner's inability was caused during his incarceration and was with the fault of the Government (for evidentiary support of these contentions see Brief, infra) then the refusal of the Government to credit the petitioner with meritorious good time allowance which would have been earned had the Government not been negligent is a denial of petitioner's equal protection under the Fourteenth Amendment."

But the assumptions of total disability and willingness to work are not supported by the evidence in this case.

9. The burden of proof in a habeas corpus proceeding is upon the petitioner. United States ex rel. Schuster v. Herold (C.A. 2), 410 F.2d 1071, 1085.

10. It has been held that, under § 4162, a prisoner cannot "choose where he will work and whether he will work." Fallis v. United States (M.D.Pa.), 263 F.Supp. 780, 783.

11. Petitioner, in his brief, has admitted that his seeking such work is a condition precedent to an award of meritorious good time under § 4162. See note 8, *supra*. Dr. Ciccone testified at the hearing that petitioner's requests for work which might earn him good time would be honored within reason.

the right to credits thereunder does not vest until the credits are earned. Howard v. United States (C.A.8), 274 F.2d 100, cert. denied 363 U.S. 832, 80 S.Ct. 1604, 4 L.Ed.2d 1525. Therefore, petitioner does not show any denial of a federally protected right when his injury did not interrupt any prior meritorious good time status.

Petitioner has failed to show any discriminatory action denying him equal protection of the laws. Petitioner has not shown that it would have been impossible for him, because of his injury, to earn meritorious good time. He has, in fact, been offered work by respondent which might have qualified him to earn credits under § 4162, but has refused to perform the work without good cause. Petitioner has no substantial record of work or services prior to injury. Therefore, he has failed to prove his injury resulted in loss of meritorious good time he otherwise would have earned. This does not show the uneven application of the statute to petitioner within the meaning of Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, a case which is relied on by petitioner in his brief.

Petitioner has failed to prove his principal contention that he has been unlawfully denied meritorious good time which would advance his time for release from custody under his sentence.

Petitioner's other statements in his petition and traverse do not state claims of violations of his federally protected rights.[12]

For the foregoing reasons, it is

Ordered that the petition herein for habeas corpus be, and it is hereby, denied.

---

12. In his original petition and the various pleadings submitted by petitioner prior to the hearing, he complained that one "Mr. Arendt refused to give me a hot lunch * * * after Dr. Ciccone ordered that hot lunch"; that on one or two occasions, Medical Center personnel had failed to supply him with mouth wash; and that one "Mr. Waugh refused one time to open the yard gate for me as was instructed prior to main yard call so that I would not be caught in the heavy traffic * * * as a result I was knocked down and trampled on"; and that "Capt. Malley also took (10) days good time or at least he said he did because of a letter I wrote him," and other minor slights. Petitioner repeated his complaints of the refusal of a hot meal and mouth wash at the hearing. He did not sustain his burden of proof with regard to the loss of good time issue. None of the minor indignities related amount to cruel and unusual punishment. In fact, much of the evidence in this case points to the conclusion that petitioner is treated with greater care than the average prisoner, perhaps because of his physical needs. As noted above, Dr. Ciccone testified that he received two portions of each item on the menus and that petitioner is permitted many extra items in his cell because of his mania for cleanliness.