Paul Lee KRAMER

v.

UNITED STATES of America et al.

Civ.A. No. C75–2501A.

United States District Court,
N. D. Georgia,
Atlanta Division.

April 2, 1976.

Frank M. Eldridge of Shelfer, Shelfer & Eldridge, Decatur, Ga., for plaintiff.

Richard A. Horder, Asst. U.S. Atty., Atlanta, Ga., for defendants.

ORDER

EDENFIELD, Chief Judge.

The questions presented in this case, as defined in this court's order of December 22, 1975, are:

(1) Did the court erroneously sentence petitioner in March 1974 under 18 U.S.C. § 4208(a)(2) in ignorance of the parole board's newly-promulgated guidelines in June 1974, which guidelines acted as an ex post facto law to effectively preclude parole for petitioner prior to his mandatory release date; and

(2) Did the parole board, by reason of its classification of petitioner's offense severity, arbitrarily and capriciously deny petitioner "meaningful consideration" under 18 U.S.C. § 4208(a)(2) in its parole considerations?

After extended and careful consideration of the very helpful briefs and supporting materials filed by both parties, the court concludes that both questions must be answered negatively. For substantially the reasons expressed in the excellent opinion of Senior Judge James Coolahan in *United States v. Silverman*, 406 F.Supp. 862 (D.N.J.1975), *appeal*

*pending,* the court now holds (1) that the parole board's guidelines and procedures herein did not operate to frustrate or otherwise circumvent this court's sentencing intent in Criminal No. 28240; (2) that the parole board's guidelines and procedures herein did not operate to frustrate or otherwise circumvent the intent of Congress in enacting 18 U.S.C. § 4208(a)(2); and (3) that petitioner herein has failed to raise a prima facie case that he was denied "meaningful consideration" for parole.

While relying for the most part on the substantive analysis and reasoning expressed in *Silverman, supra,* a few additional notes are warranted:

—First, unlike the courts involved in several of the cases cited by petitioner, this court at the time of petitioner's sentencing was not unaware of the parole guidelines already in use, the parole board's procedures with respect to "A–2" prisoners, or the interrelation between the two. *See generally Lambert v. United States,* 392 F.Supp. 113, n. 2 (N.D.Ga. 1975).

▆▆▆ —This court has not been the least vocal in its criticism of the parole board's seemingly arbitrary and unbounded discretion in times past. *See also* Davis, *Discretionary Justice,* 126 (1969). The promulgation of the parole guidelines, 38 Fed.Reg. 31942, *et seq.* (Nov. 19, 1973), was an attempt to give some structure, consistency, and the very important appearance of fairness (as well as fairness in fact) to the board's decision-making. Efforts to this end are as important as they are welcome and should continue to be encouraged. It should not be forgotten, however, that another purpose sought to be achieved by this new national paroling policy, 28 C.F.R. § 2.20(a), was the more effective minimization of widely-disparate sentencing by the various district courts. Not coincidentally, the aim of minimizing such disparities also figured heavily

in Congress's decision to enact the indeterminate sentencing statute, 18 U.S.C. § 4208(a)(2).[1] *See* 2 U.S.Cong. & Admin. News, pp. 3891, *et seq.* (1958). This court is unable to find per se unreasonable the operation of the statute allowing the sentencing court to specify that the prisoner may become eligible for parole at such time as the parole board may, in its discretion, determine, with the regulatory guidelines intended to promote more consistent exercise of that discretion and "enable fairer and more equitable decision-making without removing individual case consideration." 28 C.F.R. § 2.20(a).

—Petitioner in this case, at his own request, was afforded parole consideration six months after the commencement of his sentence. Petitioner will not now be heard to complain that such consideration occurred too early to allow the board to consider "exceptionally good institutional program achievement." Had his initial hearing been held much later, petitioner's argument would probably have been that he was not receiving early parole consideration as mandated by § 4208(a)(2).

▆▆▆ —The court rejects petitioner's contention that the guidelines focus only on pre-incarceration conduct and conditions and minimize or ignore progress while incarcerated, as well as his contention that good institutional achievement is the *main* factor to be considered in an "A–2" parole decision. While the court is unaware of any authority making such factor one of paramount weight, the sentencing judge does indeed expect that institutional performance and progress will be an important factor in the parole board's decision whether parole release is appropriate. *Garafola v. Benson,* 505 F.2d 1212, 1217–19 (7th Cir. 1974); *Lambert v. United States, supra.* The court is satisfied that the parole guidelines provide, at least theoretically, for meaningful consideration of a prisoner's insti-

---

1. Title 18 U.S.C. § 4208(a)(b) has been repealed by, and re-enacted in, the Parole Commission and Reorganization Act, P.L. 94–233 (March 15, 1976). It is now codified as 18 U.S.C. § 4205(b)(5).

tutional performance in addition to his salient factor score and severity of offense rating. Section 2.14(b) provides for a review hearing at the one-third point of a sentence before a prisoner can be set off any further after his initial hearing. Section 2.15 allows the Bureau of Prisons to petition the board for reconsideration of parole prior to the set-off date in extraordinary circumstances. Section 2.28 allows a case to be reopened at any time upon the receipt of significant new information bearing on the release decision. Section 2.20(c) allows the board to make a decision outside the guidelines in cases of exceptionally good institutional program achievement. Section 2.20(d) allows the board to categorize an offense in a lower severity rating if justified by especially mitigating circumstances. Section 2.20(e) permits the board to override the calculated salient factor score where a conflicting clinical evaluation of risk so warrants. Section 2.19(f) specifically lists several aspects of "institutional experience" to be considered by the board.

Petitioner in this case was afforded all the procedural protections mandated by the recent leading cases in this area, e.g., Grasso v. Norton (II), 520 F.2d 27 (2d Cir. 1975), Garafola v. Benson, supra, and he has failed to show that the parole regulations operate to render insignificant his progress toward rehabilitation while incarcerated. Petitioner is not entitled to early release simply because he is an "A–2" prisoner whose institutional performance has been good. The guidelines presume, and were established specifically for, cases with good institutional adjustment and program progress. 28 C.F.R. § 2.20(b). Once again, it must be stressed that § 4208(a)(2) is an early consideration provision, not an early release provision; and the sentencing judge's use of such provision does not in any way reflect upon his view of the severity of the offense. Early release for the "A–2" prisoner is no less dependent on "exceptionally good institutional program achievement" than it is for prisoners serving "straight" sentences.

—Petitioner was not denied due process simply by virtue of the fact that the parole guidelines were invalidated by Pickus v. Board of Parole, 165 U.S.App. D.C. 284, 507 F.2d 1107 (1974). Said invalidation went only to the procedural deficiencies in the promulgation of the regulations pursuant to the Administrative Procedure Act. Pickus and cases following it have specifically held that the APA invalidation had nothing to do with the substantive validity of the guidelines, and the guidelines have in fact been upheld in the face of previous challenges. See United States v. Silverman, supra; deVyver v. Warden, 388 F.Supp. 1213 (M.D.Pa.1974); Battle v. Norton, 365 F.Supp. 925 (D.Conn.1973).

■ —Finally, the court rejects petitioner's contention that the guidelines operate to deprive the sentencing judge of any substantial input into the length of a prisoner's incarceration. By employing the "A–2" sentence, the judge is authorizing the parole board to exercise its discretion to release a prisoner on parole at any time. In taking paroling policies and practices into consideration in sentencing, as he is authorized to do, see Morrissey v. Brewer, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484, 492 (1972), the sentencing judge should certainly be aware of the operation of the parole guidelines on all types of sentences. See generally United States v. Slutsky, 514 F.2d 1222 (2d Cir. 1975); Kortness v. United States, 514 F.2d 167 (8th Cir. 1975). With this in mind, the sentencing judge can have an extra impact on the eventual length of a prisoner's confinement by employing, for example, the sentencing alternative in § 4208(a)(1) which allows him to specify a minimum term (not exceeding one-third of the sentence) at the expiration of which a prisoner shall become eligible for parole. "Furthermore, if the court wishes to insure that a particular inmate will serve a longer or shorter term than indicated by the guidelines, it may impose a long minimum sentence or a short maximum sentence as, notwithstanding the guidelines, the Board has authority

only to grant release within the limits of the sentence set by the court." Hoffman & DeGostin, "Parole Decision-Making: Structuring Discretion", *Federal Probation* (December 1974). The recommendations of the sentencing judge are specifically to be considered by the board. 28 C.F.R. §§ 2.19(a)(3), 2.21.

For the reasons stated in *United States v. Silverman, supra,* and for all the foregoing reasons, the court must conclude that the operation of the parole guidelines, 28 C.F.R. § 2.20, upon a parole applicant who was sentenced under the provisions of 18 U.S.C. § 4208(a)(2), does not per se (and, in this case, did not) so frustrate the intent of either the sentencing judge or of Congress to warrant relief under 28 U.S.C. § 2255 or, if timely, Federal Rule of Criminal Procedure 35. Neither do these guidelines themselves operate to deprive an "A–2" prisoner of meaningful consideration for parole release. The parole guidelines were promulgated for the very laudable purpose of structuring the parole board's discretion and stripping away the mystery in which it had previously been enshrouded, making parole decisions fairer in fact and in appearance, and establishing a national paroling policy which would also help to minimize broad disparities in sentencing. While it is obviously not a perfect system, continued semi-annual revisions and modifications, as mandated by 28 C.F.R. § 2.20(f), have the potential to improve the parole system to the point where it can fairly and effectively meet the legitimate needs of the inmate population of the country's federal prisons. Hopefully, such efforts by the parole board, with the assistance of the judiciary (including judicial review, when warranted), will enable such needs to be met in a manner consonant with the demands of justice, enlightened penology, the public's best interest, and the Constitution. See also Hoffman, "Federal Parole Guidelines: Three Years of Experience", (Nov. 1975).

Petitioner's motion to vacate sentence, and, in the alternative, petition for habeas corpus and motion to reduce sentence, are hereby DENIED.