Leonard Joseph LaMAGNA et al., Petitioners,

v.

UNITED STATES BUREAU OF PRISONS et al., Respondents.

Civ. No. B 79–270.

United States District Court, D. Connecticut.

July 16, 1980.

Leonard Joseph Lamagna, et al., pro se and Kevan Acton, Asst. Federal Public Defender, New Haven, Conn., for petitioners.

Richard Blumenthal, U.S. Atty., Frank H. Santoro, Asst. U.S. Atty., New Haven, Conn., for respondents.

## MEMORANDUM OF DECISION

EGINTON, District Judge.

Petitioners, Leonard Joseph LaMagna, John Priore and Peter Erich Marschner,[1] are inmates at the Federal Correctional Institution in Danbury, Connecticut, currently serving five year sentences.[2] They bring this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241[3] to challenge the method used by the Bureau of Prisons to compute the sentences of prisoners serving five to ten year terms who earn "extra good time," 18 U.S.C. § 4162,[4] by working at the institution or by performing "meritorious" service.

### I

The issue raised by petitioners involves construction of the provisions of 18 U.S.C. §§ 4161 et seq., concerning sentence computation and good time, in conjunction with the mandate of 18 U.S.C. § 4206(d), which presumptively grants a parole to inmates serving sentences of five years or more. Petitioners contend that in the enactment of the § 4206(d) "mandatory" parole date in 1976, Congress repealed by implication § 4161, the statute which provides for an award of "statutory" good time to reduce the time a prisoner serves. Consequently, the petitioners argue, the Bureau of Prisons should deduct § 4162 "extra good time" from the § 4206(d) mandatory parole date, instead of deducting it from the full term date less statutory good time, as is the current practice. In order to understand petitioners' argument, it is necessary to review the statutory schemes involved in computing the time an inmate should serve and in awarding parole.

The sentence computation statute, 18 U.S.C. § 4163, provides that "a prisoner shall be released at the expiration of his term of sentence less the time deducted for good conduct."[5] A prisoner released pursuant to § 4163 is considered a mandatory releasee. Such a prisoner is entitled, as a matter of right, to release at the expiration of his full term less earned good time deductions; there is no discretion in the Bureau of Prisons to deny such release. *Weber v. Willingham*, 356 F.2d 933 (10th Cir.) *cert. denied*, 384 U.S. 991, 86 S.Ct. 1897, 16 L.Ed.2d 1008 (1966). *See also Birch v. Anderson*, 358 F.2d 520 (D.C.Cir. 1965); *United*

1. This petition was filed, *pro se*, by seven Danbury inmates on June 27, 1979. In August, 1979, after the government filed a response to the petition, the Court (Burns, J.) appointed Counsel for petitioners. During the pendency of the proceedings, four of the original petitioners (William Richard Martino, Isiah Williams, Senen Medina and William Todd) were released from the custody of Danbury officials and are no longer in the District of Connecticut.

2. Six of the seven original petitioners were serving five year sentences, which had been imposed on a variety of dates. Similarly, six of the seven were denied parole by the United States Parole Commission. The original petition makes no mention of Senen Medina's sentence or his parole status.

3. In the original, *pro se* petition, petitioners also sought certification of this proceeding as a class action, pursuant to the provisions of Fed. R.Civ.P. 23. This demand was neither expressly adopted nor expressly abandoned by Counsel in the "Supplemental Petition." The Court nevertheless notes that, although the Second Circuit has sanctioned class action-type treatment of appropriate habeas corpus petitions. *United States ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974) *cert. denied*, 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975), class treatment is neither appropriate nor necessary in this action.

4. 18 U.S.C. § 4162 denominates these awards as "Industrial Good Time," but 28 C.F.R. § 523.10, which was promulgated pursuant to § 4162, refers to these good time awards as "Extra Good Time." The Court will use the term "Extra Good Time" because it more accurately describes the variety of services and types of behavior for which an inmate can receive good time awards in addition to the presumed statutory good conduct good time.

5. 18 U.S.C. § 4163. *Discharge.*

Except as hereinafter provided a prisoner shall be released at the expiration of his term of sentence less the time deducted for good conduct. A certificate of such deduction shall be entered on the commitment by the warden or keeper.

*States ex rel. Carioscia v. Meisner,* 331 F.Supp. 635 (N.D.Ill. 1971). Section 4163, however, is designed only to reduce the period of incarceration; it does not affect the sentence itself. *Bell v. Putman,* 548 F.2d 749 (8th Cir.) *cert. denied,* 431 U.S. 958, 97 S.Ct. 2684, 53 L.Ed.2d 277 (1977); *Humphrey v. United States Board of Parole,* 438 F.2d 1214 (3d Cir. 1971). Thus, mandatory releasees, though not on parole, are subject to supervision under § 4164 "as if . . . on parole until the expiration of the maximum term or terms [of the] sentence less one hundred and eighty days."[6] If a mandatory releasee violates any of the conditions of his release during this period of parole supervision, the release can be revoked and the inmate can be reincarcerated for the remainder of the sentence.

■ The mandatory release date results from the deduction of one or both of two distinct types of "good time" from the full term of the commitment sentence(s). Section 4161 creates what is known as "statutory good time," or what petitioners refer to as "good conduct time."[7] Statutory good time is designed "to aid the rehabilitative process and to mitigate the severity of punishment by rewarding a prisoner for his good conduct." *DeSimone v. Norton,* 404 F.Supp. 964, 967 (D.Conn. 1975). *See also Short v. United States,* 344 F.2d 550 (D.C. Cir. 1965). It gives a prisoner serving a definite sentence the right to a deduction of up to ten days for each month of time served, with the size of the award varying with the length of the sentence. In this case, petitioners are entitled to eight days of good time for each month served.

In the initial administrative calculation of a mandatory release date, the Bureau of Prisons presumes that the prisoner will be awarded statutory good time pursuant to § 4161. The actual granting of statutory good time credits, however, depends upon the good conduct of the inmate, and is within the discretion of the prison authorities. The statute expressly provides that a prisoner "*shall* be entitled to a deduction from the term of his sentence" *if* that inmate's "record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment . . . ." (Emphasis added.) Similarly, statutory good time is subject to *forfeiture* in whole or in part for infractions of disciplinary rules at any time during incarceration. It therefore serves as the inmate's incentive to continue his good conduct during his imprisonment.

The second type of good time, that awarded pursuant to § 4162, gives the Attorney General, and through him the Bureau of Prisons, discretion to award good time deductions of up to five days per month for "employment in an industry or camp" or as a reward for "performing exceptionally meritorious service or performing duties of outstanding importance in connection with institutional operations."[8]

---

**6.** 18 U.S.C. § 4164. *Released prisoner as parolee.*

A prisoner having served his term or terms less good-time deductions shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days.

**7.** 18 U.S.C. § 4161. *Computation generally.*

Each prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run, as follows:

\* \* \* \* \* \*

Eight days for each month, if the sentence is not less than five years and less than ten years.

**8.** 18 U.S.C. § 4162. *Industrial good time.*

A prisoner may, in the discretion of the Attorney General, be allowed a deduction from his sentence of not to exceed three days for each month of actual employment in an industry or camp for the first year or any part thereof, and not to exceed five days for each month of any succeeding year or part thereof.

In the discretion of the Attorney General such allowance may also be made to a prisoner performing exceptionally meritorious

The extra good time statute is designed to encourage prisoners to accomplish work which will simultaneously benefit the institution and promote the inmate's rehabilitation. *Cohen v. Ciccone*, 318 F.Supp. 831 (W.D.Mo. 1970).

Unlike statutory good time, the size of the extra good time award varies with the service performed, not with the length of the sentence. Moreover, at the initial calculation of a mandatory release date, the Bureau of Prisons does not presume that extra good time will be awarded. Extra good time is deducted from the mandatory release date after the additional good time has been earned and the Attorney General has determined that it is deserved. The awarding of extra good time during any given month during which an inmate is eligible for extra good time, of course, is conditioned upon good conduct, and the Bureau can withhold a month's award of extra good time for disciplinary reasons. 28 C.F.R. §§ 523.10 et seq. *See, e. g., United States ex rel. Colen v. Norton*, 335 F.Supp. 1316 (D.Conn. 1972); *Cohen v. Ciccone, supra.* Once awarded, however, extra good time cannot be forfeited, regardless of the inmate's institutional behavior. 28 C.F.R. § 523.17(p), (q).

Many federal prisoners do not serve to the mandatory release date because they are paroled by the Parole Commission, some time after the expiration of one-third of the commitment term.[9] In 1976, Congress enacted the Parole Commission and Reorganization Act (PCRA), which overhauled the parole system, and instituted a set of mechanical parole guidelines which the Commission now applies to determine an appropriate parole date. In some cases, however, the Commission decides not to parole an eligible offender. For such inmates who are serving terms of five years or more, the PCRA included a provision for presumptive or mandatory parole at the expiration of two-thirds of the sentence(s). 18 U.S.C. § 4206(d).[10] Congress enacted this mandatory parole[11] "to insure at least some minimum period of parole supervision for all [prisoners with long sentences] . . . so that parole supervision is part of their transmission from the institutional life of imprisonment to living in the community. . . ." H.R.Rep.No.5727, 80th Cong., 1st Sess. *reprinted in* [1976] U.S.Code Cong. and Admin.News, pp. 335, 360.

## II

It is petitioners' assertion that in the creation of mandatory parole under

---

service or performing duties of outstanding importance in connection with institutional operations.

Such allowance shall be in addition to commutation of time for good conduct, and under the same terms and conditions and without regard to length of sentence.

9. Most prisoners serving definite sentences of one year or more are eligible for parole after serving one-third of the term or ten years of a life sentence or a sentence of over thirty years. 18 U.S.C. § 4205(a). In certain cases, the sentencing Court may fix a minimum which must be served *before* parole eligibility, § 4205(b)(1), or may sentence a defendant to a maximum term only, with the defendant eligible for immediate parole at the discretion of the Parole Commission. § 4205(b)(2). Section 4205(b)(2) sentences are quite rare.

10. 18 U.S.C. § 4206. *Parole determination criteria.*

(d) Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however,* That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

11. As respondents point out, 18 U.S.C. § 4206(d) creates in effect a very strong presumption in favor of parole at the two-thirds point for any prisoner serving more than five years. The statute, however, does give the Parole Commission some limited discretion vis a vis this "mandatory parole" by providing that "the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State or local crime."

§ 4206(d), Congress repealed by implication the provisions of §§ 4161 and 4163 concerning sentence computation and good time credits, as they are applied to prisoners serving sentences between five and ten years, since mandatory parole under § 4206(d) precedes mandatory release under §§ 4161 and 4163. This implied repeal is limited to those prisoners serving five to ten year sentences, because at and above ten years, the application of either § 4161 or 4206(d) leads to the same release date.

Petitioners argue that this Court must imply such a repeal because of an irreconcilable inconsistency between §§ 4161 and 4206(d). Though both provisions allegedly serve the same purpose—that of providing some supervision of prisoners during the transition from institutional to community life—the two sections lead to different release dates, in the cases of the petitioners. Since § 4206(d) postdates § 4161, petitioners conclude that § 4206(d) must repeal § 4161, to the extent of the alleged inconsistency.

As a result of the implied repeal, petitioners argue, the Bureau of Prisons should deduct any extra good time awarded pursuant to § 4162 from the mandatory parole date (§ 4206(d)) rather than from the mandatory release date (§ 4163). The current practice of deducting extra good time from the mandatory release date (full term less statutory good time, § 4163), they contend, improperly deprives an inmate of any benefit from the vested, earned extra good time, which petitioners assert is remuneration for their work in the institution.

### III

Petitioners' argument, while ingenious, proceeds from the fundamentally erroneous assumption that the statutory provisions concerning sentence computation and good time and those concerning parole are an integrated whole. Though both the method of computing sentences and awarding good time and the practice of granting parole affect the duration of an offender's incarceration, and could therefore be considered

as parts of an integrated statute, good time and parole serve fundamentally different purposes and therefore have historically been conceived of and treated as distinct statutory schemes.[12]

■ Although statutory good time is directed toward good institutional behavior, while extra good time is directed toward institutional employment, both types of good time credits are designed primarily to foster rehabilitation and to encourage good *institutional* conduct by enabling an inmate to reduce his prison time. *See DeSimone v. Norton, supra*; *United States ex rel. Colen v. Norton, supra*. Because of the means chosen, good time credits naturally mitigate the severity of punishment.

■ In contrast to the concentration of good time on a prisoner's *institutional* conduct, the parole provisions are directed primarily toward *post-confinement* societal conduct. By enacting the parole provisions, Congress intended principally to encourage the reintegration of good risk offenders into *society* as soon as they were deemed sufficiently rehabilitated to be given a chance to lead productive lives. *Geraghty v. United States Parole Commission*, 579 F.2d 238 (3d Cir. 1978) *vacated and remanded on other grounds*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Hyser v. Reed*, 318 F.2d 225 (D.C. Cir.) *cert. denied* 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963). Again incidentally, parole operated historically to mitigate the harshness of society's judgment. *See United States ex rel. Demarois v. Farrell*, 87 F.2d 957 (8th Cir. 1937). In addition, under the mechanical parole guidelines instituted as part of the 1976 PCRA, parole is now designed to minimize the effects of disparate sentencing in different district courts. *Kramer v. United States*, 409 F.Supp. 1402 (N.D.Ga. 1976).

The Court is not persuaded by petitioners' argument that the language of § 4163 and the differences between statutory and extra good time demand and enable the separation of extra good time awards from the computation of a mandatory release date

---

12. For example, the statutory provisions governing mandatory release and those pertaining to parole are codified in separate chapters of Title 18 of the U.S. Code.

under § 4163, and thus permit the deduction of extra good time from the § 4206(d) parole date. Although § 4163 provides only that a prisoner must be released at the expiration of his term "less the time deducted for *good conduct*," the express language of § 4162, the statute creating extra good time, makes the allowance of extra good time "*in addition* to commutation of *time for good conduct* . . ." (emphasis added). A reading of the plain language of the statute which requires the deduction of extra good time along with statutory good time from the *maximum term of the* sentence conforms with the historical separation of parole and sentence computation and effects the purpose of both statutory and extra good time that an inmate be encouraged to *contribute to the institution* by good works and good conduct.

The Court cannot agree with petitioners' contention that Congress intended to alter the historical separation of good time and parole by enacting § 4206(d), or that Congress impliedly repealed mandatory release for accumulated good time as applied to prisoners mandatorily paroled. Congress' stated purpose in enacting § 4206(d)—that of facilitating an offender's reintegration into the *community* after many months of institutional life—is entirely consistent with the historical impetus behind parole and is not in conflict with the Congressional intention that inmates be encouraged to behave and to contribute to *institutional* life through the awarding of good time credits. The simple fact that § 4163 and § 4206(d) lead to different release dates does not indicate a conflict. After all, a parole date is always different from the mandatory release date, and in most cases is earlier. More importantly, mandatory release and parole serve different purposes, though they both result in supervised "freedom."

As respondents point out, "mandatory" parole for eligible offenders (those serving sentences of five years or more and who are eligible for parole) at the two-thirds point is not a certainty; this parole is expressly conditioned upon a Parole Commission finding that the inmate will not be a risk to himself or society and it requires that the offender be one who would otherwise be eligible for parole. Mandatory release is, on the other hand, unconditional. The Parole Commission and/or prison authorities cannot refuse to release a prisoner who reaches a properly calculated mandatory release date, *Weber v. Willingham, supra; United States ex rel. Carioscia v. Meisner, supra,* even if he may be a risk to society and/or he is not eligible for parole.

The requirement of § 4164 that a mandatory releasee be supervised "as if . . . on parole" does not bring mandatory release into conflict with mandatory parole. Mandatory releasees, unlike parolees under § 4206(d), are *not* on parole, but are subject to parole supervision and face reincarceration for a violation of the conditions of release, if the violation occurs within the maximum term *less 180 days.* Parolees under § 4206(d), on the other hand, are on parole and are subject to parole supervision for the entire remainder of the maximum term.

Accordingly, for the reasons stated above, the petition will be denied.

It is so ORDERED.