**Roger H. HAMPEL, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5501.**

Court of Appeals of Alaska.

Feb. 9, 1996.

Larry Cohn, Anchorage, for Appellant.

Kenneth M. Rosenstein, Timothy W. Terrell, Assistant Attorneys General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.* [MANNHEIMER, Judge, not participating.]

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

*OPINION*

BRYNER, Chief Judge.

Roger H. Hampel appeals an order entered by Superior Court Judge Milton M. Souter denying Hampel's application for post-conviction relief. We affirm in part and reverse in part.

Hampel was convicted of first-degree murder for the 1982 murder of James Music. This court overturned the conviction and remanded for a new trial in *Hampel v. State,* 706 P.2d 1173 (Alaska App.1985). In 1986, Hampel agreed to plead no contest to the first-degree murder charge in return for an agreement by the state that Hampel would receive no more than sixty years' imprisonment. Superior Court Judge Victor D. Carlson sentenced Hampel to sixty years' imprisonment, with twenty years suspended.

In 1989, Hampel filed *pro se* pleadings asserting that he had made substantial progress toward rehabilitation and requesting Judge Carlson to reduce his sentence. Although Hampel initially designated his *pro se* pleadings as an application for post-conviction relief filed pursuant to Alaska Criminal Rule 35.1, the prosecution and Judge Carlson construed them as a motion for reduction of sentence filed under Alaska Criminal Rule 35(b). On June 12, 1992, Judge Carlson denied the motion because Hampel failed to meet the rule's requirements.

In July of 1992, Hampel filed a *pro se* application for post-conviction relief pursuant to Criminal Rule 35.1. This application asserted seven grounds for relief. The superior court subsequently appointed counsel to assist Hampel; Hampel's attorney added another ground for relief. The state moved for dismissal or judgment on the pleadings as to all claims. Judge Souter thereafter issued a notice of intent to dismiss Hampel's application, which called upon Hampel to show good cause why his application should not be dismissed. Hampel's counsel responded to the notice, but addressed only the supplemental issue that counsel had added to Hampel's *pro se* application. Hampel filed a *pro se* response addressing the remaining issues and a

motion, prepared by his attorney, seeking Hampel's appointment as *pro se* co-counsel for purposes of responding to the court's notice of proposed dismissal as to those issues.

Judge Souter denied Hampel's motion for co-counsel status and dismissed his application for post-conviction relief in its entirety. In ordering dismissal, Judge Souter relied on the reasons set out in his earlier notice of intent to dismiss. Notwithstanding his earlier denial of Hampel's motion for co-counsel status, Judge Souter made it clear in his dismissal order that, in deciding to dismiss the application, he had considered Hampel's *pro se* response to the notice of intent to dismiss.[1]

Hampel appeals, claiming that the superior court erred in dismissing his application for post-conviction relief. Hampel also argues that the court abused its discretion in denying his motion for appointment as *pro se* co-counsel.

■ We begin by considering the trial court's dismissal of the claim asserted below by Hampel's court-appointed counsel. Hampel's appointed counsel amended the post-conviction relief application to claim that the Department of Corrections (DOC) had improperly denied good-time credit in calculating Hampel's eligibility for discretionary parole. The state did not dispute the assertion that DOC had denied Hampel good-time credit toward discretionary parole; rather, it responded that, for purposes of determining eligibility for discretionary parole, Hampel was not entitled to receive good-time credit.

As framed by the parties, this claim raised questions of law that were properly addressed and resolved on the pleadings, without an evidentiary hearing. Judge Souter accepted the state's legal argument on its merits and rejected Hampel's claim. On appeal, Hampel challenges this ruling and renews the argument he made below. To explain our resolution of Hampel's argument, we must review the statutes under which Hampel was convicted and sentenced, as well as the statutes governing mandatory and discretionary parole.

Hampel was convicted of murder in the first degree, in violation of AS 11.41.100(a)(1). The offense was punishable under AS 12.55.125(a), which provided for a mandatory minimum term of twenty years: "A defendant convicted of murder in the first degree shall be sentenced to a definite term of imprisonment of at least 20 years but not more than 99 years." Under AS 12.55.125(f)(1) and (f)(3), this twenty-year minimum term could not be suspended or "otherwise reduced."

■ Hampel's plea bargain called for a sentence of no more than 60 years' imprisonment. The sentence Hampel actually received—sixty years with twenty years suspended—required him to serve an unsuspended term of forty years. This forty-year unsuspended term reflected the outer boundary of Hampel's incarceration;[2] it did not mean that Hampel would necessarily be required to serve forty years before being released. Hampel's actual date of release cannot be fixed without referring to two separate but related sets of statutory provisions, the first dealing with good-time credit and mandatory parole, and the second dealing with discretionary parole.

The topics of good-time credit and mandatory parole of prisoners are addressed in Title 33, Chapter 20 of the Alaska Statutes. Alaska Statutes 33.20.030 requires that "[a] prisoner shall be released at the expiration of the term of sentence less the time deducted for good conduct." Upon discharge under this provision, the prisoner is placed "on mandatory parole ... until the expiration of the maximum term to which the prisoner was sentenced[.]" AS 33.20.040(a).

---

1. In relevant part, the dismissal order stated: "Plaintiff's reply to the notice is nothing more than a rehashing of the arguments in the original application and does not cure the defects in the application."

2. For purposes of this appeal, we disregard the possibility that Hampel's forty-year unsuspended term might eventually be enlarged by a probation violation resulting in imposition of all or part of the twenty-year suspended portion of Hampel's sentence—a possibility that is irrelevant to the issues raised in Hampel's appeal.

■ Alaska Statutes 33.20.010(a) prescribes the method of calculating deductions for good time:

> Except as provided in (b) of this section and notwithstanding AS 12.55.125(f)(3) . . ., a prisoner convicted of an offense against the state or a political subdivision of the state and sentenced to a term of imprisonment that exceeds three days is entitled to a deduction of one-third of the term of imprisonment rounded off to the nearest day if the prisoner follows the rules of the correctional facility in which the prisoner is confined.

This statute, by expressly stating that a prisoner's entitlement to a deduction for good time applies "notwithstanding AS 12.55.125(f)(3)," effectively overrides the provision of AS 12.55.125(f)(3) that prohibits a twenty-year mandatory minimum sentence for first-degree murder from being "otherwise reduced." The "notwithstanding" language thereby carves out an exception that allows the mandatory minimum term for first-degree murder to be reduced, but only by the prescribed deduction "of one third of the [prisoner's] term of imprisonment." AS 33.20.010(a).

Read together, AS 12.55.125(f)(3) and the provisions of Title 33, Chapter 20 make it clear that, if Hampel follows institutional rules, he will be entitled to discharge on mandatory parole after serving two-thirds of his forty-year unsuspended term—twenty-six and two-thirds years.

A second set of statutory provisions—formerly contained in Title 33, Chapter 15 of the Alaska Statutes and now superseded by similar provisions in Chapter 16 of the same Title—addresses the topic of discretionary parole. Hampel's case is governed by the provisions of former Chapter 15, since those provisions were in effect at the time of his sentencing. For this reason, we address the provisions of former Chapter 15.

Former AS 33.15.080 gave the Alaska Parole Board general authority to release prisoners on discretionary parole. This statute also prescribed various conditions that governed the exercise of the Board's discretionary authority, and it contained a general provision making discretionary parole available only to prisoners who had served "at least one-third of the period of confinement to which a prisoner has been sentenced."

A more specific restriction on discretionary parole was spelled out in former AS 33.15.180(b) for cases involving mandatory minimum sentences:

> A state prisoner who has been imprisoned in accordance with AS 12.55.125(a) or (b) may not be released on parole until the prisoner has served at least the prescribed minimum term of imprisonment.

This restriction expressly encompassed the twenty-year mandatory minimum term prescribed for first-degree murder under AS 12.55.125(a), and was therefore directly applicable to Hampel's case. Its literal application would require Hampel to serve twenty years before becoming eligible for discretionary parole.

Hampel nevertheless maintains that this statute should not be applied literally to his case. He refers to the statutory scheme dealing with mandatory parole. Hampel particularly focuses on AS 33.20.010(a), the statute regulating computation of good time, which entitles prisoners to a one-third deduction "notwithstanding AS 12.55.125(f)(3)"— that is, notwithstanding the mandatory minimum sentence for first-degree murder. Relying on the provision governing computation of good time, Hampel insists that, for purposes of determining whether he has "served at least the prescribed minimum term of imprisonment" so as to be eligible for discretionary parole under former AS 33.15.180(b), he is entitled to a deduction of good time from the twenty-year mandatory minimum sentence. Hampel reasons that, with credit for good time under AS 33.20.010(a), he will have completed the minimum twenty-year term for first-degree murder and become eligible for discretionary parole after serving 13 and ⅓ years—20 years less a one-third deduction for good time.

■ Hampel complains, as he did below, that DOC refuses to apply good-time credit in computing his eligibility for discretionary parole. The superior court upheld DOC's argument that Hampel must serve his full minimum term, with no deduction for good

time, before he can be considered for release on discretionary parole. Hampel urges us to reverse the superior court's ruling. He reminds us that the disputed parole statutes are penal provisions and that any ambiguity in their interpretation must therefore be resolved in his favor. *Wells v. State*, 706 P.2d 711, 713 (Alaska App.1985).

■ However, the plain meaning of the disputed statutes leaves nothing ambiguous and provides no support for Hampel's argument. Although AS 33.20.010(a) entitles a prisoner to a deduction for good time and, in so doing, carves out an exception to the prohibition against "otherwise reduc[ing]" a minimum term, AS 12.55.125(f)(3), this exception, by its own definition, applies only when the minimum term is reduced as a result of deducting good-time credit from the sentence that prisoner actually received.[3] The express language of AS 33.20.010(a) allows a "prisoner ... sentenced to a term of imprisonment that exceeds three days" to receive a deduction for good time; the statutory language goes on to define this deduction as "one-third of *the term of imprisonment.*" (Emphasis added.) In context, the statutory phrase "the term of imprisonment" plainly refers to the term actually imposed on the "prisoner ... sentenced to a term of imprisonment that exceeds three days[.]" The statute gives no hint that the one-third deduction for good time is meant to apply to any "term of imprisonment" other than the term actually imposed.

Here, Hampel does not seek a deduction of one-third of "the term of imprisonment" he actually received. Hampel's problem is that, to become eligible for discretionary parole, he must first serve "at least the prescribed minimum term of imprisonment" for first-degree murder. Former AS 33.15.180(b). It is thus the "prescribed minimum term of imprisonment" specified under AS 12.55.125(a) that Hampel seeks to reduce by deducting good-time credit. Yet, as we have indicated, the plain language of AS 33.20.010(a) authorizes deductions for good time to be taken only from the sentence that

Hampel has actually received; this language does not contemplate any reduction of "the prescribed minimum term of imprisonment," as such. Moreover, no such reduction is hinted at in AS 33.15.180(b), the discretionary parole statute. In short, the plain meaning of the disputed statutes militates against Hampel's request for a deduction of good time under the discretionary parole statute.

■ We must nevertheless inquire beyond the plain meaning of the parole provisions, since Alaska has "rejected a mechanical application of the plain meaning rule in favor of a sliding scale approach" to statutory interpretation. *Peninsula Marketing Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991). Under the sliding scale approach, when legislative intent conflicts with plain meaning, we seek a balance between the two: "the plainer the language of the statute, the more convincing contrary legislative history must be." *Marlow v. Anchorage*, 889 P.2d 599, 602 (Alaska 1995) (citing *Peninsula Marketing Ass'n v. State*, 817 P.2d at 922 and *Homer v. Gangl*, 650 P.2d 396, 400 n. 4 (Alaska 1982)). In the present case, however, the legislative history of our parole statutes establishes no conflict between plain meaning and legislative intent. In fact, legislative history weighs heavily against Hampel's position. Alaska's discretionary and mandatory parole statutes derive from federal law; in enacting these provisions, our legislature expressed its intent to incorporate then existing federal law: "The principle of good time for prisoners should be adopted into Alaska law as it is found in present federal laws dealing with Alaska." *Morton v. Hammond*, 604 P.2d 1, 2 & n. 3 (Alaska 1979) (quoting 1960 House Journal 194).

Federal statutes dealing with discretionary and mandatory parole emerged from separate historical sources; those statutes have always treated the two types of release as distinct systems. *See LaMagna v. United States Bureau of Prisons*, 494 F.Supp. 189, 193 (D.Conn.1980). Federal courts considering the mandatory parole procedure—which they refer to as "conditional release"—have

---

**3.** For example, a prisoner actually sentenced to the minimum term of twenty years would be entitled to mandatory release with credit for

good time upon serving two-thirds of the sentence, even though the mandatory release would effectively reduce the minimum term.

thus observed that "[t]he conditional release procedure established by the [good-time credits] statute is *sui generis* and is not identical with [discretionary] parole." *Hicks v. Reid,* 194 F.2d 327, 328 (D.C.Cir.1952).

Within the federal system, good-time credits have been applied solely in the context of the mandatory parole procedure, and have not been extended to the calculation of eligibility for discretionary parole:

> Under the federal good time system, the Bureau of Prisons applies good time credits to the prisoner's maximum sentence which moves the mandatory release date forward, but does not affect the minimum term required to be served before an inmate becomes eligible for parole.

*Moss v. Clark,* 886 F.2d 686, 688 (4th Cir. 1989).

DOC's interpretation of Alaska's good-time statute has always been consistent with the federal approach. Alaska Parole Board regulations have consistently precluded the use of good-time deductions to reduce the prescribed minimum term that a prisoner must serve to become eligible for discretionary parole. *See* Art. I, § 035 Parole Board Regulations (1980); 22 AAC 20.085(b).

Moreover, in the limited instances when the legislature has found it necessary to apply good-time deductions within the context of Alaska's discretionary parole statutes, it has done so in clear and unambiguous terms. *See, e.g.,* AS 33.16.010(c) ("A prisoner who is not eligible for discretionary parole, or who is not released on discretionary parole, shall be released on mandatory parole for the term of good-time deductions credited under AS 33.20[.]"); AS 33.16.090(c) ("The unenhanced sentence or the initial presumptive sentence is considered served for purposes of discretionary parole on the date the unenhanced or initial presumptive sentence is due to expire less good time earned under AS 33.20.010.") [4] Absent comparably clear legislative authority, deducting good time from a prescribed minimum term for purposes of calculating eligibility for discretionary parole under former AS 33.15.180(b) would directly contravene the statutory prohibition against "otherwise reduc[ing]" a minimum term. AS 12.55.125(f)(3).

■ In sum, we find nothing in the legislative history of Alaska's parole statutes indicating a legislative intent to extend good-time deductions prescribed in AS 33.20.010(a) to the calculation of whether a prisoner is eligible for discretionary parole by virtue of having served a mandatory minimum term of imprisonment. The plain meaning of AS 33.20.010(a) is the meaning we must adopt. Adopting this meaning, we conclude that deductions of good time under AS 33.20.010(a) are inapplicable in calculating whether a mandatory minimum term of imprisonment has been served for purposes of determining discretionary parole eligibility under either former AS 33.15.180(b) or its contemporary counterpart, AS 33.16.100(d).[5] Accordingly, the superior court did not err in dismissing Hampel's claim of entitlement to a deduction for good time.

■ We must next consider the propriety of the superior court's order dismissing Hampel's remaining claims, which he advanced *pro se* and which purported to raise factual issues, rather than pure issues of

---

4. As evidence that the relationship between Alaska's good-time credit statute and its discretionary parole statutes is ambiguous, Hampel points to legislative commentary on AS 33.16.090, which mentions that "this section resolves a major ambiguity present in current law." 1985 House Journal Supp. No. 42 at 3 (April 4, 1985). However, the "ambiguity" to which the commentary refers is in the definition of the term "presumptive sentence," and not in the scope of the good-time credit statute. *Id.*

5. Alaska Statutes 33.16.100(a), which governs unclassified and class A felonies, conditions eligibility for discretionary parole not only on service of any mandatory minimum term prescribed for such crimes, but also on service of "at least one-third of the period of confinement imposed, or any minimum term set [by the sentencing court as a restriction on eligibility for discretionary parole] under AS 12.55.115 at sentencing, whichever is greater." Our decision in the present case, however, is limited to the effects of statutory good-time deductions on the mandatory minimum term provisions of the discretionary parole statutes; we do not consider or decide whether deductions of good time under AS 33.20.010(a) are otherwise applicable in determining discretionary parole eligibility.

law.[6] Dismissal of such claims is governed by Alaska Criminal Rule 35.1, which establishes "a three-phase process, the first phase involving the filing of the application and the assessment of its sufficiency to set out a *prima facie* case for relief, the second phase involving discovery and review for genuine issues of disputed fact, and the third involving the evidentiary hearing and formal resolution of disputed facts." *Parker v. State*, 779 P.2d 1245, 1246 (Alaska App.1989) (footnote omitted).

Here, the superior court terminated Hampel's action at the first phase of the process, finding his claims insufficient on their face. The ground rules for summary dismissal at the first phase of the post-conviction relief process are well settled. To determine the facial sufficiency of an application for post-conviction relief, the court must accept as true all of the allegations in the application and inquire whether those facts, if proven, would entitle the applicant to the relief sought. *See Steffensen v. State*, 837 P.2d 1123, 1125–26 (Alaska App.1992).

[A]t the first phase of the post-conviction relief process, resolution of factual disputes is not involved; the sufficiency of the pleadings must be assessed by viewing the application and all factual information incorporated therein in the light most favorable to the applicant.
*DeJesus v. State*, 897 P.2d 608, 618 (Alaska App.1995).

In his first *pro se* claim, Hampel asserted that the plea of no contest upon which he was convicted was involuntary because he entered it in the belief that his eligibility for discretionary parole would be calculated by allowing him good-time credit against the twenty-year mandatory minimum sentence for first-degree murder. As Hampel puts it, he "thought he was pleading to a sentence where he would be eligible for parole after serving one-third [rather than one-half]." Given the nature of Hampel's plea agreement, this claim seems implausible on its face.[7] Moreover, as the state correctly notes, the record of Hampel's change of plea hearing seemingly belies Hampel's claim that he believed he would get good-time credit deducted from the twenty-year mandatory minimum term.

At any rate, even when we accept Hampel's allegations of fact as true—as we must for purposes of reviewing the propriety of a summary dismissal—Hampel's claim lacks merit; for even if proved, those allegations would entitle Hampel to no relief. Hampel has at most alleged that he entered his no contest plea under a mistaken impression as

6. As a subsidiary issue on appeal, Hampel asserts that the superior court erred in denying his motion to be appointed *pro se* co-counsel for purposes of pursuing these claims. We need not decide the issue. Hampel sought co-counsel status as to these claims for the sole purpose of filing a response to the superior court's notice of their proposed dismissal. In conjunction with the motion for co-counsel status, Hampel submitted his proposed response. As we have already indicated, despite the superior court's rejection of Hampel's motion for co-counsel status, Hampel's *pro se* response was accepted for filing, and the court expressly considered it in issuing its final order of dismissal. It thus appears that the denial of co-counsel status, even if erroneous, resulted in no prejudice to Hampel.

There is no indication that the *pro se* co-counsel issue is likely to arise again on remand. Hampel's request for co-counsel status appears to have originated, not from his desire to avoid representation, but rather from his attorney's election to pursue only one of the several issues raised in the application, thus leaving Hampel to drop the remaining issues or pursue them on his own. Our current decision leaves only one issue

for consideration on remand. Hampel is entitled to the assistance of counsel with respect to that claim. *Cf. Hertz v. State*, 755 P.2d 406 (Alaska App.1988).

7. It is undisputed that Hampel could have received up to sixty years of unsuspended time under his plea agreement; he actually received only forty. When Hampel entered his no contest plea, he had no right to expect that he would receive only forty years of unsuspended incarceration or that the maximum permissible term would not be imposed. Had Hampel received sixty years' imprisonment and been eligible for discretionary parole after serving one-third of his term, as he claims he expected, then his eligibility for discretionary parole would have commenced precisely when it will now: after he served twenty years. Since Hampel's current situation would plainly be within the contemplated scope of the original plea bargain no matter how the discretionary parole provisions might be interpreted, it is difficult to understand how Hampel can claim that his misunderstanding of discretionary parole rendered his plea involuntary.

to the manner in which his eligibility for parole would be determined; nowhere does Hampel claim that he was promised by his attorney, the court, or others that his eligibility for discretionary parole would be determined in the manner he expected. The fact that Hampel unilaterally formed a subjective impression as to what might happen and that this impression ultimately proved wrong does not vitiate the voluntariness of his plea or provide grounds for its withdrawal. *Winkler v. State,* 580 P.2d 1167, 1172 (Alaska 1978).[8]

■ The next *pro se* claim in Hampel's application was that he had been the victim of prosecutorial misconduct. Hampel alleged that he entered his no contest plea in 1986 with the expectation that, several years after being sentenced, he would file a motion to reduce his sentence. According to Hampel, the prosecutor who was assigned to his case at that time had promised that, if Hampel continued to make progress toward rehabilitation, the state would not oppose the eventual reduction of Hampel's sentence. Hampel claimed that the prosecutor made this promise during the course of plea negotiations and repeated it on the record at the sentencing hearing, where Judge Carlson acknowledged it.

Hampel further alleged that, when he ultimately filed a motion to reduce his sentence in 1989, the state—represented by a new prosecutor—reneged on its earlier promise not to oppose the reduction; instead, the state claimed that it had only promised not to oppose Hampel's *filing* of a motion to reduce his sentence—a claim Judge Carlson arguably accepted when he declined to reduce Hampel's sentence.

Hampel additionally asserted that he thereafter obtained a tape recording of his sentencing proceedings and found that it had been altered to delete segments in which the state's promise was mentioned and acknowledged by the court. In support of his assertion that the sentencing record had been altered, Hampel submitted a report from an audio forensic laboratory that had examined a purportedly court-produced copy of the tape recording of the sentencing proceedings; the report indicated that preliminary examination revealed "signs suggestive of falsification," which led the examiner to form a "strong opinion that the integrity of this recording is highly questionable."

The superior court found Hampel's claim "clearly frivolous" based on the court's review of the sentencing record. In the court's view, Hampel's assertion that the tape recording had been altered was "highly dubious." The court's review of the sentencing proceedings persuaded it that the only promise made by the prosecution was that the state would not contest the filing of a motion to reduce Hampel's sentence.

■ In our view, the superior court erred in dismissing this claim. The court mistakenly characterized the claim as involving only an allegation of misconduct at the sentencing hearing. Hampel plainly alleged that the state's promise of non-opposition had been advanced both on the record—at the sentencing hearing—and off the record—during plea negotiations. Moreover, to reach the conclusion that Hampel's claim was meritless, the superior court engaged in a process of determining the truthfulness of Hampel's allegations: it evaluated the credibility of Hampel's factual assertions in light of the record before it and found them implausible. Rejection of a claim on grounds of credibility is premature at the first phase of the post-conviction relief process, however, for at this phase the superior court must accept as true all of the allegations in the application and inquire whether those facts, if proven, would entitle the applicant to the relief sought. *See Steffensen v. State,* 837 P.2d at 1125–26.

Here, Hampel's claim of misconduct, if true, would warrant relief. The superior court's order of dismissal must be vacated as to Hampel's claim of prosecutorial misconduct.

---

8. In rejecting this claim, the superior court relied on the mistaken assumption that Hampel had filed a prior application for post-conviction relief and that the claim was therefore precluded under Criminal Rule 35.1(h). We are not bound by the trial court's mistaken factual assumption and are free to affirm the court's ruling on any independent legal ground. *McGee v. State,* 614 P.2d 800, 805–06 n. 10 (Alaska 1980).

Hampel's five remaining *pro se* post-conviction claims require only brief discussion. Four of the five remaining claims were integrally related to each other and to Hampel's claim of prosecutorial misconduct.[9] They are dependent on, and subsumed within, Hampel's claim that the state reneged on its promise not to oppose the reduction of his sentence. Assuming the allegations advanced in these claims were proven true, they would afford Hampel no relief independent of that which he seeks in his claim of prosecutorial misconduct. Accordingly, they need not be separately decided.[10]

 Hampel's last *pro se* claim was a general assertion of ineffective assistance of counsel leveled against the attorney who represented Hampel in his change of plea and sentencing proceedings. Hampel based his claim on conclusory allegations of conflict, neglect, and psychological coercion, rather than on specific facts. Our review of the record convinces us that Hampel's application alleges no specific facts that, if true, would overcome the presumption of competence that attaches to an attorney's actions. *State v. Jones,* 759 P.2d 558, 569 (Alaska App.1988). Dismissal of this claim was not error.

The superior court's order dismissing Hampel's application for post-conviction relief is AFFIRMED in part and REVERSED in part. This case is REMANDED for further proceedings on Hampel's claim of prosecutorial misconduct.

---

9. In these claims, Hampel complained that Judge Carlson did not address or rule on his claim of prosecutorial misconduct when Hampel first raised it prior to Judge Carlson's denial of Hampel's motion to reduce his sentence. Hampel further complained that, in his efforts to establish that an on-record promise of non-opposition had been made during the 1986 sentencing proceedings, he was twice denied access to and delivery of transcripts, was thereafter given a tape recording that was not a true and correct record of the court proceedings, and was improperly refused a certified copy of the record. Hampel asserted as to each of these claims that he was denied his rights under the Fifth, Ninth, and Fourteenth Amendments and was consequently unlawfully confined.

10. We do not construe Hampel's transcript-related claims to assert any continuing obstruction of his right to obtain a true copy of the record of the sentencing hearing, except insofar as Hampel asserts that the copy he has now received has been altered and reflects an inaccurate picture of the actual proceedings. Since this latter assertion is an integral aspect of Hampel's prosecutorial misconduct claim, it need not be considered independently of the misconduct claim.