NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ROCKY N. SEAMAN,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13555
Trial Court No. 3KN-19-00198 CI

O P I N I O N

No. 2708 — September 24, 2021

Appeal from the Superior Court, Third Judicial District, Kenai, Jason M. Gist, Judge.

Appearances: Rocky N. Seaman, *in propria persona*, Wasilla, Appellant. Matthias R. Cicotte, Assistant Attorney General, Department of Law, Anchorage, and Clyde "Ed" Sniffen Jr., Acting Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Terrell, Judges.

Judge ALLARD.

In this appeal, we are asked to interpret the term "active term of imprisonment" as it applies to a defendant's eligibility for discretionary parole under AS 33.16.090. The Department of Corrections interprets this term to include a defendant's total term of imprisonment without any deductions for statutory good time

credit. The appellant in this case, Rocky N. Seaman, asserts that the term "active term of imprisonment" includes the deduction for statutory good time credit, and Seaman argues that Alaska's truth-in-sentencing statute, AS 12.55.015(g), requires the Department of Corrections to subtract a defendant's statutory good time from the total term of imprisonment before calculating a defendant's eligibility for discretionary parole.

For the reasons explained in this opinion, we reject Seaman's interpretation of the term, and we affirm the judgment of the superior court dismissing Seaman's application for post-conviction relief.

*Factual and procedural background*

Seaman was convicted, following a jury trial, of conspiracy to kidnap and murder his brother's girlfriend.[1]  He received a sentence of 70 years to serve.

In 2019, Seaman filed a *pro se* application for post-conviction relief alleging that the Department of Corrections had miscalculated the date on which he would become eligible for discretionary parole. According to the application, the Department of Corrections had calculated Seaman's discretionary parole eligibility date as November 10, 2028. But, according to Seaman, his discretionary parole eligibility date should have been February 18, 2018.

Seaman attributed the difference in the eligibility dates to the Department of Corrections' interpretation of the term "active term of imprisonment." The Department of Corrections interpreted the term "active term of imprisonment" as including the total term of imprisonment that Seaman had been sentenced to serve without any deductions for statutory good time credit. Seaman argued that this was an

---

[1]  *Seaman v. State*, 2016 WL 5956639, at *1-2 (Alaska App. Oct. 12, 2016) (unpublished).

erroneous interpretation of Alaska law, and he asserted that AS 12.55.015(g) — one of the provisions of Alaska's truth-in-sentencing statute — required the Department of Corrections to subtract a defendant's statutory good time credit when calculating a defendant's "active term of imprisonment" for purposes of determining the defendant's eligibility for discretionary parole.

Seaman acknowledged that a similar argument had been rejected by this Court in a 2008 unpublished decision, *Perotti v. State*.[2]  But Seaman argued that this unpublished case should not be treated as persuasive authority because it was wrongly decided.[3]  Seaman also argued that there had been developments in the law since *Perotti* was issued — namely, a 2016 amendment to the discretionary parole statute[4] and a 2011 decision by the Minnesota Supreme Court[5] — that showed that *Perotti* was wrongly decided.

The superior court rejected Seaman's legal arguments, concluding that *Perotti* remained persuasive authority and that the Department of Corrections' interpretation of "active term of imprisonment" was correct.  The court then dismissed Seaman's application for post-conviction relief.

This appeal followed.

---

[2]  *Perotti v. State*, 2008 WL 2469147 (Alaska App. June 18, 2008) (unpublished).

[3]  *Cf. McCoy v. State*, 80 P.3d 757, 764 (Alaska App. 2002) (holding that unpublished decisions of the Court of Appeals may not be cited as binding authority for any proposition of law, although they may be cited for whatever persuasive value they may have).

[4]  *See* former AS 33.16.090(b)(8) (2017).

[5]  *State v. Leathers*, 799 N.W.2d 606 (Minn. 2011).

*Seaman's argument regarding AS 12.55.015(g) and his eligibility for discretionary parole*

Under AS 33.20.010(a), most prisoners who are sentenced to a term of imprisonment that exceeds 3 days are "entitled to a deduction of one-third of the term of imprisonment . . . if the prisoner follows the rules of the correctional facility in which the prisoner is confined."[6] This is commonly referred to as "good time credit." A prisoner who is eligible for good time credit can still lose all or part of that credit if the prisoner does not follow the Department of Corrections' rules.[7]

When a prisoner has served their term of imprisonment minus the deduction for good time credit, the prisoner is released from prison.[8] If the prisoner's term of imprisonment is 2 years or more, the prisoner is released on supervised mandatory parole "until the expiration of the maximum term to which the prisoner was sentenced."[9] In other words, if a prisoner's term of imprisonment is 2 years or more, the prisoner serves their good time on supervised mandatory parole release under the custody and jurisdiction of the Alaska Parole Board.[10]

Mandatory parole is different than discretionary parole, which is provided only at the discretion of the parole board.[11] As a general matter, a defendant becomes

---

[6] Some prisoners are statutorily ineligible for good time credit based on their crime. *See* AS 33.20.010(a)(1)-(4); *see also State v. McCallion*, 875 P.2d 93, 95-97 (Alaska App. 1994) (describing the history of good time credit under both federal and Alaska law).

[7] *See* AS 33.20.050.

[8] AS 33.20.030.

[9] AS 33.20.040(a).

[10] *Id.*; *see also* AS 33.16.020.

[11] *See Thomas v. State*, 413 P.3d 1207, 1212 (Alaska App. 2018).

eligible for discretionary parole after they have served a specified portion of their sentence, which is often significantly earlier than their release date for mandatory parole.[12] In the current case, the parties agree that Seaman's eligibility for discretionary parole is governed by the pre-2019 version of AS 33.16.090(b)(1). This provision provides, in relevant part, that a prisoner "may not be released on discretionary parole until the prisoner has served . . . one-third of the active term of imprisonment imposed."[13]

Alaska Statute 33.16.090(c)(1) further provides that, as used in this section, "active term of imprisonment" has the meaning given in AS 12.55.127. That statute defines "active term of imprisonment" as "the total term of imprisonment imposed for a crime, minus suspended imprisonment."[14] The parties agree that "suspended time" is the portion of a defendant's sentence that the defendant does not serve but that can be imposed in the future if the defendant violates their conditions of probation.[15] (In Seaman's case, there is no suspended time because he received a flat sentence of 70 years to serve without a probationary term.)

Where the parties disagree is whether the term "active term of imprisonment" includes a deduction for the defendant's statutory good time credit when calculating Seaman's eligibility date for discretionary parole.[16]

The Department of Corrections' position is that the term "active term of imprisonment" does not include any deductions for statutory good time credit. The

---

[12]  *See* AS 33.16.090(b). Some prisoners are statutorily ineligible for discretionary parole. *See, e.g.*, AS 33.16.090(a).

[13]  Former AS 33.16.090(b)(1) (2018).

[14]  AS 12.55.127(e)(1).

[15]  *See* AS 12.55.080.

[16]  *See* former AS 33.16.090(b)(1) (2018).

Department of Corrections bases its interpretation on the plain language of AS 12.55.127, which divides a defendant's sentence into two parts — the "active" term of imprisonment and any "suspended" term of imprisonment.[17] Because statutory good time credit is not a "suspended" term of imprisonment, the Department of Corrections reasons that a defendant's statutory good time credit must be included in the calculation of a defendant's active term of imprisonment for purposes of determining the defendant's eligibility for discretionary parole. For example, in Seaman's case, his "active term of imprisonment" is 70 years, so according to the Department of Corrections' calculations, Seaman will not be eligible for discretionary parole until he serves one-third of that time — *i.e.*, until he serves roughly 23.3 years.

In contrast, Seaman argues that a defendant's "active term of imprisonment" should include a deduction for the defendant's statutory good time credit.[18] Thus, under Seaman's interpretation of the statute, his "active term of imprisonment" is 46.7 years (70 years minus Seaman's statutory good time credit of 23.3 years), and he should be eligible for discretionary parole once he has served one-third of the 46.7 years — *i.e.*, after he has served roughly 15.6 years.

Seaman's interpretation of "active term of imprisonment" is based on a statutory provision, AS 12.55.015(g), that does not directly address a defendant's eligibility for discretionary parole. This provision was enacted in 1997 as part of

---

[17] *See* AS 12.55.127(e)(1) ("[A]ctive term of imprisonment" means "the total term of imprisonment imposed for a crime, minus suspended imprisonment[.]"); *see also* AS 33.16.090(c)(1) ("'[A]ctive term of imprisonment' has the meaning given in AS 12.55.127[.]").

[18] *See* AS 33.20.010(a).

Alaska's Truth in Sentencing Act.[19]  The purpose of the provision was to allow Alaska to take advantage of a federal government incentive program that provided funds for states that were able to show that their prisoners were incarcerated for eighty-five percent of their sentences.  The provision was modeled after what was called the "Minnesota exception," which allowed states to reach this benchmark by excluding any periods of statutorily required supervised release — *i.e.*, by excluding statutory good time credit.[20]

> Alaska Statute 12.55.015(g) provides that:

> Unless a defendant is ineligible for a deduction under AS 33.20, when a defendant is sentenced to a term of imprisonment of two years or more, the sentence consists of two parts:  (1) a minimum term of imprisonment that is equal to not less than two-thirds of the total term of imprisonment; and (2) a maximum term of supervised release on mandatory parole that is equal to not more than one-third of the total term of imprisonment; the amount of time that the inmate actually serves in imprisonment and on supervised release is subject to the provisions of AS 33.20.010-33.20.060.

In other words, for purposes of Alaska's compliance with the federal truth-in-sentencing program, unless a defendant is ineligible for statutory good time credit under AS 33.20, a defendant's sentence is considered to be divided into two parts — (1) the portion that a defendant must serve in prison before becoming eligible for mandatory parole (two-thirds of the total term of imprisonment); and (2) the portion that constitutes a defendant's statutory good time (one-third of the total term of imprisonment), which a defendant serves on supervised release under the jurisdiction of the parole board.  By dividing a defendant's sentence in this manner, Alaska was able to meet the federal

---

[19]  SLA 1997, ch. 37, §2; *see also Perotti v. State*, 2008 WL 2469147, at *2 (Alaska App. June 18, 2008) (unpublished).

[20]  *Perotti*, 2008 WL 2469147, at *2-3.

requirement that prisoners serve at least eighty-five percent of their sentence once their good time credit has been excluded.[21]

The legislative history behind AS 12.55.015(g) makes clear that this statutory apportionment of a defendant's sentence into two component parts was intended only to ensure that Alaska could be in compliance with this federal requirement. The legislature was otherwise assured that this provision would not affect how sentences were imposed or how eligibility for discretionary and mandatory parole was determined.[22]

Notwithstanding this legislative history, Seaman argues that, by enacting AS 12.55.015(g), the legislature *was* changing the way that discretionary parole eligibility was determined. In essence, Seaman argues that AS 12.55.015(g) converted a defendant's sentence into two parts: (1) an "active" term of imprisonment that is served in prison and does not include statutory good time credit; and (2) a "supervised" term of imprisonment that is served on mandatory parole supervised release and constitutes a defendant's good time credit. Therefore, according to Seaman, the Department of Corrections must deduct a defendant's statutory good time credit when it calculates a defendant's "active term of imprisonment" for purposes of determining the defendant's eligibility for discretionary parole under AS 33.16.090.

There are a number of problems with this argument, as we explained in our prior unpublished decision in *Perotti*. First, it is inconsistent with the applicable regulations. The Alaska Administrative Code sets out a rule regarding the effect of

---

[21] *Id.* at *3-4.

[22] *Id.*; Minutes of House Judiciary Comm., Senate Bill 67, testimony of Brett Huber, legislative assistant to Senator Rick Halford (the prime sponsor) and testimony of Margot Knuth, Assistant Attorney General, Criminal Division, Department of Law (Apr. 16, 1997).

accrued good time credit on the calculation of eligibility for discretionary parole.
22 AAC 20.085(b) states:

> Good time credited under AS 33.20.010 does not reduce the term of imprisonment to be served before a prisoner is eligible for discretionary parole, except as provided for in AS 33.16.090(b).

This regulation is consistent with the Department of Corrections' practice of not deducting statutory good time from the calculation of a defendant's eligibility for discretionary parole unless expressly required to do so by AS 33.16.090(b).[23]

Second, Seaman's interpretation is inconsistent with the history and practice of discretionary parole in Alaska. In *Hampel v. State*, we held that a defendant's mandatory minimum term of imprisonment for purposes of determining a defendant's eligibility for discretionary parole is calculated without applying any deductions for good time credit.[24] We based our decision, in part, on the fact that Alaska's discretionary and mandatory parole statutes were intended to be consistent with the federal statutes on which they were modeled, and we noted that the federal approach had always treated the two systems — mandatory and discretionary parole — differently. As we explained, "Under the federal good time system, the Bureau of Prisons applies good time credits to the prisoner's maximum sentence which moves the mandatory release date forward, but does not affect the minimum term required to be served before an inmate becomes

---

[23] *See* AS 33.16.090(b)(3) (expressly requiring good time credits to be deducted prior to the calculation of discretionary parole eligibility for defendants sentenced to an aggravated sentence above the presumptive range).

[24] *Hampel v. State*, 911 P.2d 517, 522-23 (Alaska App.1996). We did not reach the specific legal question presented here and in *Perotti* — whether a deduction for good time credit was otherwise necessary in determining discretionary parole eligibility. *Id.* at 523, n.5.

eligible for parole."[25] We also noted in *Perotti* that Alaska's appellate courts have always assumed, without directly addressing the question, that good time credit was not deducted from a defendant's term of imprisonment when calculating the defendant's eligibility for discretionary parole.[26]

Lastly, Seaman's interpretation is inconsistent with the plain language of AS 12.55.015(g) and the underlying legislative intent. Alaska has "rejected a mechanical application of the plain meaning rule in favor of a sliding scale approach" to statutory interpretation.[27] Under the sliding scale approach, when legislative intent conflicts with plain meaning, we seek a balance between the two: "the plainer the language of the statute, the more convincing contrary legislative history must be."[28]

Here, the legislative intent is aligned with the plain language of the statute. When the legislature enacted AS 12.55.015(g), they were told that the purpose of the provision was to create compliance with the federal truth-in-sentencing grant program.[29] And they were also told that the provision would not alter any existing law regarding how sentences are imposed or how eligibility for discretionary and mandatory parole is determined.[30]

---

[25]  *Id.* at 523 (quoting *Moss v. Clark*, 886 F.2d 686, 688 (4th Cir. 1989)).

[26]  *Perotti*, 2008 WL 2469147, at *2 (citations omitted).

[27]  *Hampel*, 911 P.2d at 522.

[28]  *Id.*

[29]  *See* Minutes of House Judiciary Comm., Senate Bill 67, testimony of Brett Huber, legislative assistant to Senator Rick Halford (the prime sponsor) and testimony of Margot Knuth, Assistant Attorney General, Criminal Division, Department of Law (Apr. 16, 1997).

[30]  *Id.*

In keeping with that legislative intent, AS 12.55.015(g) does not use the term "active term of imprisonment," the term used in the discretionary parole statute, AS 33.16.090. Instead, AS 12.55.015(g) uses different statutory terms — referring to a defendant's "minimum term of imprisonment," a defendant's "total term of imprisonment," and a defendant's "maximum term of supervised release on mandatory parole."

As already mentioned, the term "active term of imprisonment" has a specialized statutory meaning. It means "the total term of imprisonment imposed for a crime, minus suspended imprisonment."[31] In other words, as the Department of Corrections has always interpreted it, a defendant's "active term of imprisonment" for purposes of determining discretionary parole is *all* of the *non-suspended* time imposed in the defendant's sentence, which includes both the time that the defendant will serve in prison as well as any time the defendant may serve on supervised mandatory parole based on statutory good time credits.

There are other sentencing statutes that use "active term of imprisonment" in this manner. For example, AS 12.55.155(a)(2), which governs aggravators and mitigators in presumptive sentencing, provides, in relevant part,

> Except as provided in (e) of this section, if a defendant is convicted of an offense and is subject to sentencing under AS 12.55.125(c), (d), (e), or (i) and . . . the low end of the presumptive range is more than four years, the court may impose a sentence below the presumptive range as long as the active term of imprisonment is not less than 50 percent of the low end of the presumptive range for factors in mitigation or may increase the active term of imprisonment up to the maximum term of imprisonment for factors in aggravation.

---

[31] AS 12.55.127(e)(1).

In this provision, it is clear that "active term of imprisonment" includes the full amount of non-suspended imprisonment, without any deductions for good time credit. Thus, if a defendant's presumptive range is 6 to 8 years with a maximum sentence of 10 years, and there is a statutory mitigating factor that applies to their case, the sentencing court is authorized to impose a sentence of 3 years or more. Conversely, if a statutory aggravator applies, the sentencing court is authorized to impose up to 10 years. In either case, however, the "active term of imprisonment" refers to the full term of non-suspended imprisonment prior to any deductions for good time credit.

Moreover, a review of the discretionary parole statutes demonstrates that when the legislature intends for statutory good time credits to be deducted from the calculation of a defendant's eligibility for discretionary parole, the legislature does so in a clear and unambiguous manner. For example, a different rule applies to defendants who have been sentenced to enhanced — *i.e.*, aggravated — sentences under AS 12.55.155(a). Under AS 33.16.090(b)(3), a defendant who is sentenced to a single enhanced sentence under AS 12.55.155(a) that is above the applicable presumptive range may not be released on discretionary parole until the defendant has served the greater of the following:

> (A) an amount of time, *less good time earned under AS 33.20.010*, equal to the upper end of the presumptive range plus one-fourth of the amount of time above the presumptive range; or
>
> (B) any term set under AS 12.55.115.[32]

The legislature's inclusion of the language "less good time earned under AS 33.20.010" in AS 33.16.090(b)(3) and the absence of that language in former AS 33.16.090(b)(1)

---

[32] AS 33.16.090(b)(3)(A) & (B) (emphasis added).

indicates that the legislature did not intend statutory good time credits to be deducted from a defendant's "active term of imprisonment" unless it expressly said so.

Ultimately, the proper interpretation of a criminal statute is a question of law that we review *de novo* using our independent judgment.[33] When interpreting a statute using our independent judgment, we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy, after considering: (1) the plain meaning of the statute; (2) the legislative purpose of the statute; and (3) the intent of the statute.[34] Here, the plain meaning of the relevant statutes, the associated legislative history, and the history and practice of discretionary parole all support the Department of Corrections' position that a defendant's "active term of imprisonment" for purposes of determining a defendant's discretionary parole eligibility does not include a deduction for statutory good time credit unless otherwise specified by statute.[35]

Accordingly, we conclude that our decision in *Perotti* is correct and Seaman's interpretation of the statute is incorrect, and that the superior court therefore did not err when it relied on *Perotti* to dismiss Seaman's application for post-conviction relief.

We now turn to Seaman's additional arguments that there have been developments in the law since *Perotti* that should alter this conclusion.

---

[33] *See Callan v. State*, 904 P.2d 856, 857 (Alaska App. 1995); *Hillman v. State*, 382 P.3d 1198, 1200 (Alaska App. 2016).

[34] *Rubey v. Alaska Comm'n on Postsecondary Educ.*, 217 P.3d 413, 415 (Alaska 2009).

[35] *See* 22 AAC 20.085; *Hampel v. State*, 911 P.2d 517, 522-23 (Alaska App. 1996); *Perotti v. State*, 2008 WL 2469147, at *1-4 (Alaska App. June 18, 2008) (unpublished).

*Seaman's arguments regarding former AS 33.16.090(b)(8) and the Minnesota Supreme Court case* <u>State v. Leathers</u>

Seaman points to two developments in the law that have occurred since *Perotti* was decided, and he asserts that these developments show that *Perotti* was wrongly decided.

One development in the law that Seaman points to is the enactment of former AS 33.16.090(b)(8) in 2016.[36] (This provision was later repealed by the legislature in 2019.[37]) Former AS 33.16.090(b)(8) provided, in pertinent part, that a defendant

> sentenced . . . to a single sentence under AS 12.55.125(i)(3) and (4), and has not been allowed by the three-judge panel under AS 12.55.175 to be considered for discretionary parole release, may not be released on discretionary parole until the prisoner has served, after a deduction for good time earned under AS 33.20.010, one-half of the active term of imprisonment imposed.

In other words, a defendant sentenced for certain lower-level sex offenses such as second-degree sexual assault or third-degree sexual assault, who has not been made eligible for discretionary parole through the three-judge panel, is eligible to be released on discretionary parole after serving one-half of the defendant's active term of imprisonment from which the defendant's statutory good time credit has been deducted.

Seaman acknowledges that this provision does not apply to him, and he also acknowledges that it has since been repealed. However, he argues that, by enacting AS 33.16.090(b)(8), the legislature created ambiguity in the discretionary parole statute regarding the meaning of "active term of imprisonment." Because the meaning of the

---

[36] *See* SLA 2016, ch. 36, § 124.

[37] *See* SLA 2019, ch. 4, § 107.

term is now ambiguous, according to Seaman, we must construe its meaning in favor of Seaman.[38]

We do not find this argument persuasive. The meaning of the term "active term of imprisonment" was not made ambiguous by the new provision that was subsequently repealed. Instead, we agree with the Department of Corrections that the enactment of this provision lends further support to its position that statutory good time credits should *not* be deducted from a defendant's "active term of imprisonment" unless a statute expressly requires such a deduction.

The other development in the law that Seaman relies on is a 2011 decision by the Minnesota Supreme Court, *State v. Leathers*.[39]

The defendant in *Leathers* was convicted of five counts of first-degree assault against a peace officer. The court imposed concurrent sentences totaling 189 months, with eligibility for supervised release after 126 months in prison.[40] The question before the Minnesota Supreme Court was whether Leathers was actually eligible for supervised release under Minnesota law.[41] The applicable statute provided, in pertinent part:

> [A] person convicted of assaulting a peace officer . . . is not eligible for probation, parole, discharge, work release, or

---

[38]   *See State v. Andrews*, 707 P.2d 900, 908 (Alaska App. 1985) ("Where a statute is susceptible to two or more conflicting but reasonable meanings it is ambiguous. We resolve the ambiguity by adopting the meaning most favorable to the defendant.").

[39]   *State v. Leathers*, 799 N.W.2d 606 (Minn. 2011).

[40]   *Id.* at 608.

[41]   *Id.* at 608-09.

supervised release, until that person has served the full term of imprisonment as provided by law[.][42]

The statutory term "full term of imprisonment" is not defined under Minnesota law and the parties disagreed about the meaning of that phrase.[43] The State argued that "full term of imprisonment" meant *all* the time that had been imposed, and that Leathers would therefore never be eligible for supervised release.[44] Leathers argued that "full term of imprisonment" should be interpreted as meaning only two-thirds of the time imposed.[45]

Leathers derived this argument from the statutory language of Minnesota Statute § 244.01, subdivision 8, Minnesota's truth-in-sentencing statute, which was enacted prior to the assault statute under which Leathers was convicted.[46] Minnesota Statute § 244.01, subdivision 8, states that the phrase "term of imprisonment" is defined as "the period of time equal to two-thirds of the inmate's executed sentence." Based on this definition, Minnesota was in compliance with the federal truth-in-sentencing grant program's requirement that defendants serve at least eighty-five percent of their sentence in order to receive federal funding.[47]

Ultimately, the Minnesota Supreme Court concluded that both interpretations of the term "full term of imprisonment" were reasonable interpretations

---

[42] *Id.* at 608 (quoting Minn. Stat. § 609.221, subd. 2(b) (2010)).

[43] *Id.* at 609.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *See* U.S. Gen. Acct. Off., *Truth In Sentencing: Availability of Federal Grants Influenced Laws in Some States*, at 4-7 (Feb. 1998).

under Minnesota law and that the statute was therefore ambiguous.[48] Because the statute was ambiguous, the court applied the rule of lenity, and construed the statute in accordance with Leathers's interpretation.[49] The court also reasoned that the statutory interpretation doctrine of *in pari materia* supported this result because the two statutes at issue shared a common purpose and subject matter and should therefore be construed together.[50]

Seaman relies on *Leathers* to argue that this court should interpret the term "active term of imprisonment," as used in the Alaska discretionary parole statute, the same way the Minnesota Supreme Court interpreted "full term of imprisonment," as used in the Minnesota assault statute — *i.e.*, as meaning only two-thirds of a defendant's executed sentence. According to Seaman, we are required to follow the reasoning of the *Leathers* court to reach this conclusion because our truth-in-sentencing statute, AS 12.55.015(g), is based on the "Minnesota exception" that allowed states to achieve compliance with the federal truth-in-sentencing grant program by dividing a defendant's sentence into two parts — "(1) a minimum term of imprisonment that is equal to not less than two-thirds of the total term of imprisonment; and (2) a maximum term of supervised release on mandatory parole that is equal to not more than one-third of the total term of imprisonment."[51]

---

[48] *Leathers*, 799 N.W.2d at 610-11.

[49] *Id.* at 611.

[50] *Id.*

[51] AS 12.55.015(g); *Perotti v. State*, 2008 WL 2469147, at *3 (Alaska App. June 18, 2008) (unpublished); *cf.* Minn. Stat. § 244.101, subd. 1 (1993) ("When a felony offender is sentenced to a fixed executed sentence for an offense committed on or after August 1, 1993, the executed sentence consists of two parts: (1) a specified minimum term of imprisonment

(continued...)

But Seaman's reliance on *Leathers* is misplaced. Although both Minnesota and Alaska used the "Minnesota exception" of dividing sentences into two parts, their statutory schemes are otherwise completely different. We do not face the ambiguity that the *Leathers* court faced in construing "full term of imprisonment" because the term used in Alaska's discretionary parole statute — "active term of imprisonment" — *has* a statutory definition. Alaska Statute 33.16.090(c)(1) states that the term "active term of imprisonment," as used in this subsection, has the meaning defined in AS 12.55.127(e)(1). And AS 12.55.127(e)(1) defines "active term of imprisonment" as "the total term of imprisonment imposed for a crime, minus suspended imprisonment."

Alaska's truth-in-sentencing statute also does not define "term of imprisonment" as "two-thirds of the inmate's executed sentence" as Minnesota law does. Instead, AS 12.55.015(g) uses the term "total term of imprisonment" and it is clear from the statutory language that the "total term of imprisonment" includes *all* of the time the defendant is sentenced to serve before any deduction for statutory good time credit:

> Unless a defendant is ineligible for a deduction under AS 33.20, when a defendant is sentenced to a term of imprisonment of two years or more, the sentence consists of two parts: (1) a minimum term of imprisonment that is equal to not less than two-thirds of *the total term of imprisonment*; and (2) a maximum term of supervised release on mandatory parole that is equal to not more than one-third of *the total term of imprisonment*.[52]

Moreover, unlike the two Minnesota statutes at issue in *Leathers*, former AS 33.16.090(b)(1) (the Alaska discretionary parole statute that applies to Seaman's

---

[51]    (...continued)
that is equal to two-thirds of the executed sentence; and (2) a specified maximum supervised release term that is equal to one-third of the executed sentence.").

[52]    AS 12.55.015(g) (emphasis added).

case) and AS 12.55.015(g) (Alaska's truth-in-sentencing statute) are not meant to be construed *in pari materia*. That is, they do not have a common purpose and subject matter. It is clear that when the Alaska legislature enacted the discretionary parole statutes, the intent was for Alaska law to follow federal law, which does not deduct a defendant's statutory good time credit when calculating a defendant's eligibility for discretionary parole.[53] In contrast, when the Alaska legislature enacted AS 12.55.015(g), the intent was solely to define a defendant's sentence in a manner that allowed Alaska to qualify for the federal truth-in-sentencing grant program.[54] The enacted provision was not intended to affect the way that discretionary parole was calculated.

In sum, the *Leathers* case is of little value when it comes to interpreting and implementing Alaska law. There is nothing about the reasoning or the holding of that case that alters our view of the issue presented here.

For all of the reasons stated here, and in our prior unpublished decision in *Perotti*, we conclude that the Department of Corrections' interpretation of "active term of imprisonment" is correct and that the Department is not required to deduct a defendant's statutory good time credit when calculating a defendant's eligibility for discretionary parole unless the statute expressly requires such a deduction.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[53]  *See Hampel v. State*, 911 P.2d 517, 522-23 (Alaska App. 1996).

[54]  *See Perotti*, 2008 WL 2469147, at *2-4.

– 19 –                                                                              2708